Petition in Behalf of Peter H. GREEN, Petitioner, For a Writ of Habeas Corpus, etc.

UNITED STATES of America ex rel. J. B. TIETZ, Relator,

v.

SECRETARY OF THE NAVY

and

Commanding General Marine Corps Base, Camp Pendleton, California, Respondents.

No. 2071.

United States District Court S. D. California, S. D.

Oct. 23, 1957.

Peter H. Green in pro. per., J. B.
Tietz, Anthony V. Randles, Los Angeles,
Cal., for petitioner.

Laughlin E. Waters, U. S. Atty., Richard A. Lavine, Asst. U. S. Atty., Chief, Civil Division, Jordan A. Dreifus, Asst. U. S. Atty., Los Angeles, Cal., Richard J. Selman, Commander, U. S. Navy, Office of the Judge Advocate General, U. S. Navy, Washington, D. C., Vernon A. Peltzer, Lt. Col., U. S. Marine Corps., Legal Officer, Camp Pendleton, Cal., of counsel, for respondent Major General Reginald H. Ridgely, U. S. Marine Corps.

JAMES M. CARTER, District Judge.

Petitioner having filed his petition for writ of habeas corpus, injunction, mandamus and declaratory relief on September 20, 1957, and this Court having on the same day issued its order to the respondent to show cause why any or all of said writs or relief should not issue or should not be granted as the case may be, the respondent thereafter appearing for himself and for no other person, made his return to said petition. The parties thereafter appearing in open Court on September 30, 1957, before the Honorable James M. Carter, United States District Judge, the petitioner appearing both in person and by his counsel, J. B. Tietz and Anthony V. Randles, and the respondent appearing by his counsel, the United States Attorney with Lt. Colonel Vernon A. Peltzer, U. S. Marine Corps and Commander Richard J. Selman, U. S. Navy, both of counsel, by Jordan A. Dreifus, Assistant U. S. Attorney, the parties thereat having stipulated that the Petition be deemed a traverse to the return, the petitioner thereupon having amended his petition by adding certain averments thereto, the respondent thereafter having generally denied each and all of the added averments with leave to further amend his return, the parties having further stipulated that said general denial be further deemed traversed and the parties thereupon further stipulating that issue was joined and that the matter may proceed for hearing, a hearing was thereupon held before the Honorable Judge as aforesaid.

Said hearing having been held as aforesaid; at which certain stipulations of the parties were received; and at which certain documents were admitted into evidence, namely those described as Respondent's Exhibits 1 through 23 inclusive, Petitioner's Exhibits A through C inclusive, and Court's Exhibit A; the parties thereafter having no further evidence to offer, and having made arguments and filed briefs; the Court having considered all of the foregoing, and being fully advised in the premises, the Court thereupon having announced its decision in favor of the respondent, the Court now makes its findings of fact, conclusions of law and judgment.

### Findings of Fact

1.

Respondent is Commanding General, Marine Corps Base, Camp Pendleton, California. Respondent made his appearance in this case for himself only and for no other person. The Secretary of the Navy has not entered any appearance in this suit and has not been served with the process of this Court in this suit. The Office of the Secretary of the Navy is located in Washington, D. C.

2.

On August 22, 1956, petitioner's parents, Helen Delong Green and Harry E. Green, executed Department of Defense form 373. "Parental Consent", by which they consented in writing for petitioner to enlist in the U. S. Marine Corps Reserve. On September 10, 1956, at U. S. Marine Corps Recruiting Sub-Station, Evanston, Illinois, Marine Corps recruiter Michael E. Casella fully explained to the petitioner the contents of Form MCNPB 7–702–2283 entitled "Fraudulent Enlistment Warning Sheet"; after such explanation the petitioner, in the presence of said Casella, subscribed to said Fraudulent Enlistment Warning Sheet and the contents thereof; among other things to which petitioner thereby subscribed is the statement, "That I am *not* a conscientious objector."

### 3.

On September 11, 1956, at Chicago, Illinois, the petitioner voluntarily enlisted in the U. S. Marine Corps Reserve as a private, service number 1634136, under authority of 50 U.S.C.A. § 1012, and in the manner and in accordance with procedures prescribed by appropriate Marine Corps recruiting regulations. On the same date, September 11, 1956, the petitioner voluntarily applied for extended active duty in the United States Marine Corps for a period of twenty-four months as authorized by 50 U.S.C.A. § 1012 and 50 U.S.C.A. § 961(d); and on the same date, September 11, 1956, the petitioner was in such premises ordered to extended active duty for that period. The Court finds that Respondent's Exhibits 1, 2, 3, and 4 truly and correctly recite and represent the acts, conduct, representations and transactions indicated in them, and all the said acts, conduct, representations and transactions were done, made and entered into consciously, knowingly, deliberately, and comprehendingly, as to the subject matter, by the petitioner.

### 4.

Petitioner entered upon his extended active duty as aforesaid at Chicago, Illinois, and was assigned on September 14, 1956, to the Marine Corps Recruit Depot, San Diego 40, California, for recruit training. In that assignment he thereafter received the usual training prescribed for all Marine Corps recruits, which included, among other things, the following: On October 27, 1956, he was issued and accepted in his hands a United States rifle, calibre 30 M–1; he thereafter trained in the use and firing of that weapon and qualified as a "Marksman" after range firing. He also trained in the use of and fired the Browning Automatic Rifle, calibre .30, and the Automatic Pistol, calibre .45. On January 11, 1957, petitioner satisfactorily completed recruit training as aforesaid.

### 5.

On January 12, 1957, petitioner was transferred to a unit of the Second Infantry Training Regiment, Marine Corps Base, Camp Pendleton, California, for further duty and training. He remained assigned to command of that regiment until June 20, 1957, when he was transferred to Headquarters Battalion, Marine Corps Base, Camp Pendleton, under which he remained until August 13, 1957, when he was again transferred back to a subordinate unit of the Second Infantry Training Regiment. At this date petitioner remains a member of that command, being specifically a member of Headquarters Company, First Battalion, Second Infantry Training Regiment. Respondent's Exhibit 5 and the entries therein, correctly recite petitioner's military service.

### 6.

On January 28, 1957, petitioner had, at his own request, a personal interview with Lieutenant Commander Kermit R. Cassady, Chaplain's Corps, U. S. Navy, Regimental Chaplain, Second Infantry Training Regiment. At that interview petitioner stated certain objections to the bearing of arms.

### 7.

At no time prior to January 28, 1957, did petitioner ever make known, or in any way bring to the attention of any person in authority, any objection to military service, or to any duty, function, or obligation required of him, on any religious or conscientious basis. At no time prior to March 11, 1957, did petitioner ever in writing make known or bring to the attention of any person in authority any such objections as aforesaid. For the first time on March 11, 1957, petitioner, by his statement then submitted to Chaplain Cassady, requested relief in writing, from some duty, function, or obligation, of his military service, asserting his objections on a religious or conscientious basis. Enclosure 4 of Respondent's Exhibit 6, the statement of Kermit R. Cassady, correctly states the substance of the aforementioned interviews of petitioner with Chaplain Cassady.

**8.**

On February 13, 1957, petitioner was admitted to the U. S. Naval Hospital, Camp Pendleton, California, and remained therein until returned to duty on March 8, 1957. During that period of hospitalization a psychiatric examination was performed upon the petitioner by Lieutenant S. L. Shapiro, Medical Corps, U. S. Naval Reserve, a qualified psychiatrist. On March 11, 1957, petitioner was again psychiatrically examined by Lieutenant Commander Gonzalo G. Ochoa, Medical Corps, U. S. Naval Reserve, a qualified psychiatrist, at 13 Area Dispensary, Marine Corps Base, Camp Pendleton. Enclosures 5 and 6 of Respondent's Exhibit 6 correctly recite and represent the substance of the aforesaid psychiatric examinations and the findings and conclusions of the respective psychiatrists.

**9.**

On March 13, 1957, petitioner was interviewed by his Company Commander, Lieutenant Walsh, at which time petitioner stated his desire to be classified as a conscientious objector based upon his personal beliefs. Thereafter on the same day petitioner was interviewed by his Battalion Commander, Major C. J. Busick, U. S. Marine Corps, in connection with his desire to be classified as a conscientious objector. On March 15, 1957, petitioner, at his own request, appeared before Colonel John H. Masters, U. S. Marine Corps, Commanding Officer, Second Infantry Training Regiment, the petitioner's Regimental Commander, at which time petitioner submitted his written statement dated March 12, 1957, a copy of which is in evidence as Petitioner's Exhibit A. Thereafter on March 18, 1957, petitioner was again interviewed by Colonel Masters and then on March 19, 1957, petitioner submitted another statement in writing dated on that date in which petitioner then stated his conscientious objections to duty as based upon religious grounds. Thereafter Colonel Masters initiated action as set forth in his letter 1/GTC/gan P–14–3 Serial 385 dated April 1, 1957,

pursuant to Marine Corps Order 1306.16 dated November 2, 1956, and Department of Defense Directive 1315.1 dated June 18, 1951 (Respondent's Exhibits 6, 18 and 17 respectively).

**10.**

Thereafter the Commandant of the Marine Corps in due course received the file in this matter, and on April 9, 1957, requested the recommendation of the Chaplain's Division, U. S. Navy, concerning the designation of the petitioner as a conscientious objector; the Chaplain's Division of the U. S. Navy, thereafter advised the Commandant that petitioner "has become a conscientious objector only to further his escape from military regulations and is not acting from sincere motivation," and the Commandant, by letter on April 1, 1957 (Respondent's Exhibit 7), took action disapproving petitioner's request.

**11.**

Petitioner was duly informed of the decision of the Commandant of the Marine Corps as aforesaid, and on May 14, 1957, he appealed said decision to the Secretary of the Navy by letter dated May 14, 1957 (Respondent's Exhibit 9 (minus enclosure (2) ). The Secretary of the Navy forwarded the appeal and the entire file to the Judge Advocate General of the Navy for his comment and recommendation thereon; the Judge Advocate General on July 12, 1957, gave his written opinion, including his comment and recommendations in the matter to the Secretary of the Navy (Respondent's Exhibit 10), and the Secretary of the Navy, upon such recommendation and after weighing all the circumstances of the case, on August 7, 1957, took action affirming the decision of the Commandant of the Marine Corps (Respondent's Exhibit 11).

**12.**

The petitioner was duly informed of the aforesaid decision of the Secretary of the Navy and petitioner thereupon on August 13, 1957, appealed that decision to the Secretary of Defense (Respondent's Exhibit 12). The Secretary of

Defense thereafter referred the entire matter to his General Counsel for further consideration of all the circumstances of the case and for decision by the General Counsel on behalf of the Secretary of Defense. Thereafter on August 30, 1957, Robert Dechert, General Counsel of the Department of Defense for and in behalf of the Secretary of Defense, affirmed the aforesaid decisions of the Commandant of the Marine Corps and the Secretary of the Navy in his letter dated August 30, 1957, directed to the petitioner (Petitioner's Exhibit C).

### 13.

On August 23, 1957, petitioner requested and was granted ten days' leave for the purpose of visiting his home in Chicago, Illinois, and for the purpose of obtaining and consulting religious and legal counsel. Thereafter at petitioner's request, he was granted on September 2, 1957, a ten-day extension of leave for the same purpose. Thereafter at petitioner's further request, he was granted, on September 12, 1957, a further ten-day extension of leave for the same purposes as aforesaid. Said leave expired and petitioner returned to duty with his organization on September 22, 1957. Petitioner was granted special liberty for the purpose of his appearance in this Court on September 30, 1957, and he did take such liberty and did so appear and was present in Court on that date.

### 14.

Petitioner is presently under no restraint of any kind authorized or provided by the Uniform Code of Military Justice or the Manual for Courts-Martial, 1951, and there are no charges pending against him for any offense. Petitioner is presently in duty status at the Marine Corps Base, Camp Pendleton, California, as a member of the United States Marine Corps Reserve on active duty, with the rank of private, under normal and usual duties required of persons of such status and rank.

### 15.

Petitioner has not been discharged from the Marine Corps Reserve or released from his term of active duty with the Marine Corps.

### 16.

On September 8, 1957, Bishop John Wesley Lord of 581 Boylston Street, Boston, Massachusetts, sent a telegram addressed to President Dwight D. Eisenhower at Newport, Rhode Island (page 4 of Court's Exhibit A). On the same day, Bishop Lord also attempted to reach President Eisenhower by telephone with substantially the same message as is contained in said telegram. In these premises, Bishop Lord was acting for and in behalf of the petitioner. On September 9, 1957, Captain E. P. Aurand, U. S. Navy, naval aide to the President, replied in writing to Bishop Lord (page 3 of Court's Exhibit A). On the same day, Captain Aurand by memorandum for the Secretary of the Navy referred the above telegram and reply thereto to the Secretary of the Navy (page 2 of Court's Exhibit A). On September 16, 1957, the Secretary of the Navy replied directly to Bishop Lord in writing (page 1 of Court's Exhibit A).

### 17.

In all of the aforementioned interviews of the petitioner with Chaplain Cassady, the psychiatrists above named, Lieutenant Walsh, Major Busick, Colonel Masters, and any other person or official in authority in relation to this matter, and in the submission by the petitioner to these various officials of statements, evidence and information, oral and written in this matter and in the application resulting therefrom and the submission to and consideration by the Commandant of the Marine Corps, the Secretary of the Navy, and General Counsel of the Department of Defense, the petitioner was in each and all of these proceedings, acts, and things, not forbidden or prevented from: (a) submitting any and all evidence, information, or arguments in his own behalf that he desired to do;

(b) having or obtaining the assistance of counsel; (c) having or obtaining access to any and all information and evidence used by the various aforementioned officials in their various recommendations, considerations, and determinations.

### 18.

Petitioner did not in any of the proceedings, acts, and things, enumerated in paragraph 17 of these findings above, demand or request any form of hearing or other form of procedure other than the modes of proceeding actually accorded to him by the above enumerated officials; nor did petitioner demand or request any other documents, statements or information relied upon or used in the premises by the above enumerated officials other than those matters and things which were furnished to petitioner; nor did petitioner request or demand the assistance of counsel in the premises other than such counsel as he may have actually provided for himself.

### 19.

Where a person has voluntarily entered upon a term of active duty in the U. S. Marine Corps, and thereafter claims a conscientious objection to bearing arms, and applies for a classification as a conscientious objector, there are no provisions in any law or regulation, including any of those mentioned above, which, in connection with such application, or the consideration of it, either require or forbid, or otherwise relate to any of the following items:

(a) The assistance of a friend, or counsel, legal or otherwise.

(b) A hearing procedure of any kind other than the interviews of such person of the type and in the manner as appears above in these findings with respect to the petitioner herein.

(c) Supplying to or otherwise informing such person of any information or evidence, in possession of the Marine Corps which is adverse to the claim or application.

(d) Allowing such person to submit additional evidence or information in his own behalf.

(e) Calling witnesses to testify, if a hearing of some kind were provided for or held.

(f) Appointing, detailing, or otherwise empowering an impartial hearing officer or board of officers or other tribunal to hear and/or determine such matter.

### Conclusions of Law

#### 1.

■ Petitioner's enlistment and application for active duty on September 11, 1956, constitute a valid lawful, binding and voluntary entry of petitioner into his military status as a member of the Marine Corps on active duty for the term of twenty-four months; and petitioner thereby undertook all of the military duties, obligations, and functions of an enlisted member of the Marine Corps on active duty for such period as specified by the terms of his enlistment and application therefor. In re Grimley, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636; In re Morrissey, 137 U.S. 157, 11 S.Ct. 57, 34 L.Ed. 644.

#### 2.

■ The terms of petitioner's active duty so undertaken by him included the duty to bear arms without limitation or restriction.

#### 3.

■ Petitioner having entered upon such military status and term of active duty voluntarily and by his own consent and not by any compulsion of law, petitioner not being under any restraint or limitation of personal liberty other than his normal duty status as a member of the armed forces on active duty, and treating the petition herein as a petition for a writ of habeas corpus, this Court lacks jurisdiction of the subject matter of this petition on the ground that petitioner is not in custody or under restraint. McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238; Wales v.

Whitney, 114 U.S. 564, 5 S.Ct. 1050, 29 L.Ed. 277; Biron v. Collins, 5 Cir., 145 F.2d 758, 759; cf. United States ex rel. Steinberg v. Graham, D.C., 57 F.Supp. 938; See: Miley v. Lovett, 4 Cir., 193 F.2d 712.

4.

■ Treated other than as a petition for a writ of habeas corpus, petitioner has failed to join in this suit the Secretary of the Navy and the Secretary of Defense who are indispensable parties. Petrowski v. Nutt, 9 Cir., 161 F.2d 938; Money v. Wallin, 3 Cir., 186 F.2d 811.

5.

■ The rights to exemptions from and restrictions upon military duties in 50 U.S.C.A.Appendix, § 456(j) and the regulations thereunder, do not apply to persons who enlist, or voluntarily enter upon, active duty in the armed forces. McCord v. Page, 5 Cir., 124 F.2d 68; See: Mayborn v. Heflebower, 5 Cir., 145 F.2d 864.

6.

■ Neither Department of Defense Directive 1315.1, nor Marine Corps Order 1306.16 creates or extends to a person who voluntarily enlisted in the armed forces the right to obtain a classification as a conscientious objector (including therein the concomitant exemption from the duty of bearing arms).

7.

■ Insofar as petitioner may be under any restraint or threatened restraint arising out of the applicability of any provision of the Uniform Code of Military Justice, 50 U.S.C.A. § 551 et seq., to him, the military-judicial remedies in any resulting courts-martial proceeding are adequate and available, and the petition herein, upon that ground, fails to state a claim for relief because petitioner has failed to exhaust those remedies. See: U. S. v. Voorhees, 4 USCMA 509, 16 CMR 83; Gusik v. Schilder, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146.

8.

■ Even if there is jurisdiction in this Court and further if petitioner has a right to obtain a classification of conscientious objector and the concomitant exemption from bearing arms, the determinations of the Commandant of the Marine Corps, the Secretary of the Navy, and General Counsel of the Department of Defense, denying such classification to petitioner in this case were, all, determinations and decisions made under fair procedures, were not arbitrary or capricious and had an affirmative basis in fact, and for these reasons, petitioner has no right to any relief in this suit, since such decisions were valid, final and binding. Dickinson v. U. S., 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132; Witmer v. U. S., 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428.

9.

■ Assignments to duty within the armed forces of the members thereof are matters solely within the discretion of the armed forces and are not subject to review in a Federal court. This includes any assignment of the petitioner to duties including the bearing of arms, during his term of active duty. 5 U.S. C.A. § 1009; Updegraff v. Talbot, 4 Cir., 221 F.2d 342; Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842.

10.

Judgment should be entered vacating the order to show cause herein and denying the petition on file herein on each and all of the grounds stated above in the alternative and for costs.

11.

Let judgment be entered accordingly.