**UNITED STATES of America**

v.

**Daniel M. KENSTLER.**

**Crim. No. 65-263.**

United States District Court
W. D. Pennsylvania.

Feb. 18, 1966.

Gustave Diamond, U. S. Atty., George Shumacher, Asst. U. S. Atty., Pittsburgh, Pa., for the United States.

Michael Hahalyak, Pittsburgh, Pa., for defendant.

DUMBAULD, District Judge.

Defendant was tried without a jury, pursuant to agreement between the defendant and the government, approved by the Court. This procedure is valid. Patton v. United States, 281 U.S. 276, 296, 50 S.Ct. 253, 74 L.Ed. 854 (1930); Singer v. United States, 380 U.S. 24, 33, 36, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965).

The charge is violation of 50 U.S.C.A. App. 462(a) by failure to report for per-

---

formance of civilian work. Defendant concedes that in fact he did not report but contends that the Draft Board's order was void. Such disregard of an outstanding (even though invalid) order is often risky. Poulos v. State of N. H., 345 U.S. 395, 409, 73 S.Ct. 760, 97 L.Ed. 1105 (1953); United States v. United Mine Workers of America, 330 U.S. 258, 303, 309–311, 667 S.Ct. 677, 91 L.Ed. 884 (1947).

It is contended that under Section 1626.41 of the Regulations a registrant shall not be inducted during the time that an appeal is pending, and that defendant had taken an appeal but that the Appeal Board had not performed its mandatory duty under Section 1626.26 to "classify" the defendant. It is also contended that the Draft Board's classification of I–O (conscientious objector) was arbitrary, capricious, and contrary to law in that defendant should have been classified as 4–D (full time minister).

The record discloses that defendant was classified I–O three times, on June 11, 1962, July 10, 1962, and August 22, 1962. Defendant questions only the August 22, 1962, classification, contending that by that time his status had changed.

At the outset it should be observed that military service, like taxation, is part of the price of civilization. Borden Co. v. Clearfield Cheese Co., 244 F.Supp. 366, 367 (W.D.Pa.1965). Regulation of both burdens is a legislative task, and in both fields the courts are concerned only with effectuating the intent of Congress. A taxpayer is under no moral obligation to pay more than Congress has exacted, as Judge Learned Hand long ago pointed out in a frequently quoted passage. Helvering v. Gregory, 69 F.2d 809, 810 (C.C.A.2, 1934); aff'd 293 U.S. 465, 469, 55 S.Ct. 266, 79 L.Ed. 596 (1935). Cf. Thurman Arnold, The Folklore of Capitalism (1937) 324. The draft, like taxation, is an intensely practical matter, and our decision in this case is not to be governed by logic, reason, morality, political expediency, equity or justice, but simply and solely by ascertainment of what Congress has prescribed.

■ We emphasize that there is no constitutional right to exemption or immunity from the burden of national defense. The exemptions which the law allows are derived solely as a matter of grace from the choice of Congress, just as exemptions from jury duty are wisely accorded to certain groups by legislative choice. Dickinson v. United States, 346 U.S. 389, 395, 74 S.Ct. 152, 98 L.Ed. 132 (1953).

As a matter of historical interest, it may be noted that in Madison's original proposals, and in those passed by the House, there was a provision, which was deleted in the Senate, that "no one religiously scrupulous of bearing arms, shall be compelled to render military service in person". This was part of what is now the Second Amendment, dealing with the right of the people to bear arms. Dumbauld, The Bill of Rights and What It Means Today (1957), 37, 46, 211, 214.

There is, of course, a constitutional right to freedom of religion under the First Amendment; but, unless Congress ordains otherwise, that right to worship must be exercised on the battlefield or in a space capsule if that is where the worshipper happens to be at the time in the course of due discharge of his obligations as a citizen.

■ It should also be noted that religion affords no defense against the normal exertion of the police power. It is not a shield against vaccination as a public health measure. Jacobson v. Commonwealth of Massachusetts, 197 U.S. 11, 29, 31, 25 S.Ct. 358, 49 L.Ed. 643 (1905). It does not preclude the application of child labor laws to children selling literature in the streets at night. Prince v. Commonwealth of Massachusetts, 321 U.S. 158, 166–169, 64 S.Ct. 438, 88 L.Ed. 645 (1944). It is not an open sesame to sexual or alcoholic indulgence. Reynolds v. United States, 98 U.S. 145, 162–166, 25 L.Ed. 244 (1879); Davis v. Beason, 133 U.S. 333, 342–345, 10 S.Ct. 299, 33 L.Ed. 637 (1890); Cleveland v. United States, 329 U.S. 14, 20, 67

S.Ct. 13, 91 L.Ed. 12 (1946); Shapiro v. Lyle, 30 F.2d 971, 973 (W.D.Wash. N.D.1929).

As a matter of fact, Congress has, in accordance with long-standing policy, excused from "combatant training and service" any person who "by reason of religious training and belief, is conscientiously opposed to participation in war in any form." 50 U.S.C.A. App. 456 (j); United States v. Seeger, 380 U.S. 163, 170, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). This provision authorizes such objectors to be assigned to civilian work of national interest. It was such an order, dated March 12, 1965, ordering defendant to report on March 23, 1965, that defendant here challenges.

Congress also in 50 U.S.C.A. App. 456 (g) exempted regular or duly ordained ministers of religion from training and service (without prescribing any requirement for civilian work). These terms are defined in 50 U.S.C.A. App. 466(g) as follows:

"(g) (1) The term 'duly ordained minister of religion' means a person who has been ordained, in accordance with the ceremonial, ritual, or discipline of a church, religious sect, or organization established on the basis of a community of faith and belief, doctrines and practices of a religious character, to preach and to teach the doctrines of such church, sect, or organization and to administer the rites and ceremonies thereof in public worship, and who as his regular and customary vocation preaches and teaches the principles of religion and administers the ordinances of public worship as embodied in the creed or principles of such church, sect, or organization.

(2) The term 'regular minister of religion' means one who as his customary vocation preaches and teaches the principles of religion of a church, a religious sect, or organization of which he is a member, without having been formally ordained as a minister of religion, and

who is recognized by such church, sect, or organization as a regular minister.

(3) The term 'regular or duly ordained minister of religion' does not include a person who irregularly or incidentally preaches and teaches the principles of religion of a church, religious sect, or organization and does not include any person who may have been duly ordained a minister in accordance with the ceremonial, rite, or discipline of a church, religious sect or organization, but who does not regularly, as a vocation, teach and preach the principles of religion and administer the ordinances of public worship as embodied in the creed or principles of his church, sect, or organization."

The above-quoted language clearly shows that no person is entitled to this exemption unless engaged "regularly, as a vocation" in teaching and preaching the principle of religion and administering the ordinances of public worship of his church.

What facts does the record disclose concerning defendant's status?

From 1959 to date of a questionnaire filed April 30, 1962, defendant worked as an automobile mechanic, engaged in "automotive repair". On a questionnaire filed November 18, 1963, he still gave his "present occupation" as "auto mechanic", repairing cars and managing the business. He had been engaged in that work for four years, he then said. (Incidentally, in that questionnaire he checked the box "widower", although on April 12, 1962, he was marked as never having been married.) He is a high school graduate, although evidently not proficient in spelling.

In his letter filed January 20, 1964, rejecting civilian work, he writes "It is not only a violation of my conscience to take arms and kill but also to render *any* support to any government other than God's which is now established in heaven and will shortly rule the earth. (Dan. 2:44) I cannot give my loyality

[*sic*] to two governments." This was elaborated in a letter of February 27, 1964: "To the government I owe taxe [*sic*] money for services rendered but I do not owe my person. I dedicated this to the creator and not the creation. Therefor [*sic*] I cannot accept any work that would put me under the subjection of the government."

On August 22, 1962, defendant appeared before the Draft Board, and stated: "I work 15 to 20 hours a week working on cars. I repair them. The rest of my time is spent preaching God's gospel." On that date the Board again classified defendant as I-O by vote of 3-0. On September 3, 1962, he filed an appeal accompanied by three pages of material, all of which is stamped "Reviewed by Appeal Board for Western Judicial District Oct 3 1962."

SSS Form No. 120, containing "Minutes of Action by Appeal Board", shows that on October 3, 1962, by vote of 4-0, the Appeal Board classified defendant as I-O. Also the chronological docket compiled on SSS Form 100-S, under date of October 8, 1962, shows: "File returned from Appeal Board and classified I-O by vote 4 to 0. SSS Form #110 mailed to registrant with Action of Appeal Board."

It thus appears that the Appeal Board fully complied with Section 1626.26 of the Regulations, which reads:

"(a) The appeal board shall classify the registrant, giving consideration to the various classes in the same manner in which the local board gives consideration thereto when it classifies a registrant, except that an appeal board may not place a registrant in Class IV-F because of physical or mental disability unless the registrant has been found by the local board or the armed forces to be disqualified for any military service because of physical or mental disability.

(b) Such classification of the registrant shall be final, except where an appeal to the President is taken: *Provided,* That this shall not be construed as prohibiting a local board from changing the classification of a registrant in a proper case under the provisions of Part 1625 of this chapter."

■ The evidence in the record clearly shows that defendant is not a full-time minister entitled to exemption but is an auto mechanic. The record amply sustains the Appeal Board's classification of I-O.

■ We are not unmindful of the example of the Apostle Paul, who labored with his own hands as a tent-maker during the infancy of the church. Acts 18:33; 20:34; 2 Thess. 2:7-8. We note also defendant's statement that the Watchtower Bible and Tract Society of Brooklyn, N. Y.,[1] recognizes as a full-time minister one devoting 100 hours a month, which defendant says he does, spending only 20 hours a week (or roughly 80 hours a month) at his auto repair job. However, as stated above, the question is what Congress meant, not what the Watchtower Society accepts, and the legislative language evinces a clear intent to exempt only a person devoting his entire working life during reasonable business hours to the ministry. We live in an age of specialization. The working day is commonly accepted as eight hours, and a five-day week would mean that at least approximately 160 hours a month [2] should be devoted to the ministry in order to qualify for exemption.

Moreover, it is not a fact that the Watchtower Bible and Tract Society recognizes defendant as entitled to the min-

---

1. This parent organization of the religious group to which defendant professes allegiance is apparently to be regarded by the courts as a religious organization, although it actually seems to be a publishing company engaged in the sale of literature. Douglas v. City of Jeannette, 319 U.S. 157, 169–174, 63 S.Ct. 877, 87 L.Ed. 1324 (1943).

2. In Dickinson, supra, 346 U.S. at 392–393, 74 S.Ct. 152, a ratio of 150:40 was deemed acceptable. Defendant's ratio of 100:80 is obviously quite different.

isterial exemption. Such status is not claimed by it for anyone below the rank of "Pioneer". United States v. Sturgis, 342 F.2d 328, 330 (C.A.3, 1965). There is not a shred of evidence in the record to show that the Society has accredited defendant in such capacity. On the contrary, his highest post is the designation as "Accounts Servant" on November 14, 1961. This is simply equivalent to treasurer of the local congregation. The Appeal Board would have had no warrant in the record had it granted defendant ministerial exemption.

Accordingly, we find defendant guilty as charged.