**UNITED STATES of America ex rel. Christopher O'HARE, Petitioner,**

v.

**Col. H. M. EICHSTAEDT, CE–USAR, Commanding Officer 6211th U.S. Army Garrison, Building 1242, Fort Scott, Presidio of San Francisco, California, et al., Respondents.**

No. 46723.

United States District Court
N. D. California.

June 26, 1967.

Ewart L. Merica, San Francisco, Cal., for petitioner.

Charles Collett (now deceased), Asst. U. S. Atty., San Francisco, Cal., for respondents.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

Petitioner, a private in the United States Army Reserve, has filed a petition for a Writ of Habeas Corpus pursuant to the provisions of 28 U.S.C. §

2241. Subsequently, on April 10, 1967, petitioner filed a First Amended Petition for Writ of Habeas Corpus and Complaint for (A) Declaratory Relief, (B) Injunctive Relief, and (C) Mandamus.

On April 20, 1967, this Court, treating the application as an application for habeas corpus relief, issued an Order to Show Cause. On May 12, 1967, respondent filed its Return and on May 22, 1967, petitioner filed his Traverse and a memorandum in support thereof.

On May 25, 1967, this Court held a show cause hearing at which argument was heard and the case submitted on the papers there on file together with Exhibits "A" and "B" offered by counsel for the government.

The facts shown by the record are substantially as follows:

That on February 18, 1966, petitioner voluntarily enlisted with the United States Army Reserve, 6211th, United States Army Garrison, Fort Scott, San Francisco, California; that at the time he was not a conscientious objector but after his enlistment, he came to the conclusion that he was conscientiously opposed to war in any form; that on August 17, 1966, petitioner completed and filed with his home unit, his application and request for separation from the United States Army Reserve on the ground that he conscientiously objected to participation in war in any form. (Exhibits 15–A through 15–J).

The record further shows that petitioner was interviewed by the Chaplain who recommended that he not be discharged; that on or about September 6, 1966, petitioner was evaluated by a psychiatrist, Captain Marrin, who stated that petitioner's position was sincere; that on September 13, 1966, petitioner was counseled by Captain Leslie with respect to Title 38 U.S.C. § 3103, relating to waiver of certain veteran's benefits; that these papers, along with the recommendations of the various commanding officers, were forwarded through military channels to the Chief of Personnel

Operations, Fort Benjamin Harrison, Indiana; that the Director of the Selective Service System, when asked for an advisory opinion as to whether petitioner would qualify for a conscientious objector classification if not for his present Army Reserve status, stated that, based upon the information in the file, petitioner would not be classified as a conscientious objector if he were being considered for induction. (Government Exhibit "B", p. 19.) Finally, petitioner was notified by letter, dated March 6, 1967, that his request for discharge from the Army Reserve had "not been favorably considered by the Secretary of the Army". (Complaint Exhibit 26–A.)

Thereafter, on April 11, 1967, petitioner received orders from the Army Reserve to report "with their (his) consent" for active duty training to begin April 24, 1967. (Petitioner's Affidavit filed April 14, 1967.)

Thereafter, petitioner commenced the present proceeding and upon the suggestion of this Court, the order to report on April 24, 1967, was rescinded pending these proceedings, subject, however, to new, similar orders to report for active duty training in the future.

Petitioner contends that his claimed status as a conscientious objector entitles him to discharge from the Army Reserve pursuant to the provisions of Army Regulations (AR) 135–25 (Exhibits 28–A through 28–F), A.R. 135–178 (Exhibits 27–A through 27–Y), and 50 App. U.S.C. § 456(j).

Petitioner next argues that the above regulations are unconstitutional in that they (1) infringe upon his right to freedom of religion, (2) subject him to cruel and unusual punishment, (3) deny him procedural and substantive due process, and (4) deny him equal protection of the laws.

Petitioner also contends that the military failed to comply with the procedures set forth in item "7" in A.R. 135–25 (Exhibits 27–C and 27–D) which sets forth certain steps to be taken by Commanders having custody of records per-

taining to applicants for conscientious objector status.

## The Preliminary Issue re Custody

Respondent makes the threshold point that petitioner is not "in custody" within the meaning of 28 U.S.C. § 2241 (1964) and therefore not entitled to habeas corpus relief, citing United States ex rel. McKiever v. Jack, 351 F.2d 672 (2d Cir. 1965); McCord v. Page, 124 F.2d 68 (5th Cir. 1941); and In re Grimley, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890).

Several Courts have held that persons in the active service of the military are in custody within the meaning of 28 U.S.C. § 2241 (1964), and, as such, entitled to petition for the writ of habeas corpus to inquire into the legality of their detention by the military. In re Phillips, 167 F.Supp. 139 (S.D.Cal.1958); United States ex rel. Orloff v. Willoughby, 104 F.Supp. 14 (W.D.Wash.1952).

On the other hand, in Petition of Green, 156 F.Supp. 174 (S.D.Cal.1957), which involved a petition for a writ of habeas corpus by a member of the Marines, the Court held that petitioner, who was on normal, active duty, could not be found to be "in custody" or under restraint, and therefore, was not entitled to habeas corpus relief to consider his claim of conscientious objection. See also: United States ex rel. McKiever v. Jack, supra; McCord v. Page, supra.

Assuming, however, that members of the military on active duty may be considered to be "in custody" for habeas corpus purposes, the question remains whether a member of the United States Army Reserve, who has not entered on active training duty, may be so considered.

Petitioner enlisted on the Army Reserve under authority of A.R. 140-III and entered into a prescribed agreement set forth in his enlistment record (Government Exhibit B). In substance petitioner agreed to attend certain drills and periods of active training duty.

Among other things, petitioner agreed to enter on active duty for training for a period of twenty (20) weeks within one hundred and twenty (120) days of his enlistment (Government Exhibit "B" page 3), unless a delay for a longer period is authorized by the Department of the Army.

Petitioner has not yet performed this period of initial active duty for training. On March 30, 1967, petitioner was ordered, "with his consent" to report for the twenty week period of initial active duty for training to begin April 24, 1967 (Government Exhibit "A"). It will be particularly noted that the order in this form was, not peremptory, but rather subject to petitioner's consent.

This order was made pursuant to 10 U.S.C. § 672(d) which authorizes an authority designated by the Secretary of Defense to order a member of a reserve component under his jurisdiction to active duty with "his consent".

Respondent alleges in its Return that, if petitioner does not consent to active training duty, his commander will complete and forward notice to the local selective service board that petitioner has failed to satisfactorily participate in his Reserve Program.

Respondent cites Section 18(b) of A.R. 135-90 for this procedure but the Court is of the view that Section 18(a) (change-9, 1966), not Section 18(b), is the Section applicable to petitioner's situation.

Section 18(a) provides in part as follows:

"* * * As an exception to the foregoing, male obligated enlisted members, assigned to U.S.A.R. units, who entered into military service while under 26 years of age in any program requiring the performance of initial active duty for training, and who have not performed such training, will not be ordered to 45 days involuntary AC-DUTRA for failure to participate satisfactorily. Upon approval of Army area Commanders or corps commanders to whom authority may be delegated by Army area commanders, such personnel will be reported to the local

Selective Service Boards for priority induction. * * *"

Section 18(a) of A.R. 135-90 further provides that "In the event that the local Selective Service Board indicates that the individual will not be inducted and there are indications that he will not be ordered to initial ACDUTRA within 90 days of certification to the local board, discharge from the U.S.A.R. will be accomplished in accordance with the provisions of A.R. 135-178 for the convenience of the Government."

This procedure is part of a regulatory scheme under which enlistment in the Army Reserve is adjusted to the requirements of the Universal Military Training Act, Title 50 App. U.S.C. § 451 et seq. under which every male citizen between the ages of 18 and 26 is subject to induction into the Armed forces of the United States.

Upon petitioner's enlistment in the Army Reserve, he obtained a 1-D from his Selective Service Board as deferment from induction and he remains deferred so long as he satisfactorily performs his Army Reserve obligations. If he chooses not to so perform, he is no longer entitled to the deferment and, in lieu of any compulsory duty as a member of the Army Reserve, he is merely referred to his Selective Service Board by the Army Reserve under the provisions of A.R. 135-90 above referred to.

So far as the Court can determine, there is no reason why petitioner cannot, prior to any such Selective Service induction, assert his claim of conscientious objection upon the grounds, terms and procedures provided by 50 App. U.S.C. § 456(j). The record shows that petitioner already has on file at his local Selective Service Board, a "Selective Service System Special Form for Conscientious Objector" (SS FORM NO. 150), (Complaint Exhibits 6-A through 6-K.)

■ For the foregoing reasons the Court finds that (whatever may be the case with respect to a person enlisted in the regular branches of the armed forces or even an Army reservist entered on active training duty) petitioner in this case is not subject to any peremptory orders or to any actual detention by the Army Reserve without his own consent, nor is petitioner subject to any discipline by the Army Reserve arising out of his refusal to consent to active training duty under the "with his consent" order of March 30, 1967, or similar orders, and that petitioner's freedom of movement is, therefore, neither restrained nor threatened by the respondent.

The Court, therefore, concludes that petitioner is not "in custody" within the meaning of 28 U.S.C. § 2241.

Apart from petitioner's lack of custody status (for habeas corpus relief purposes) the record is such that in any event petitioner would not be entitled to either habeas corpus relief or to the mandamus, declaratory or injunctive relief prayed for in his First Amended Complaint.

Petitioner's basic contention is that he is entitled to discharge from whatever obligation for military service he assumed by his enlistment with the Army Reserve upon the ground that, since his enlistment, he has become a conscientious objector and, as such, is exempt from military service under the provisions of the First Amendment and the Universal Military Training and Service Act. 50 App. U.S.C. § 451 et seq., particularly § 456(j).

■ Although the First Amendment does not require that persons opposed to war upon religious grounds be exempted from military service (Brown v. McNamara, 263 F.Supp. 686 (D.N.J. 1967) the Congress has, nevertheless, sought to accommodate military service to conscientious objection by enacting 50 App. U.S.C. § 456(j), a statutory expression of legislative grace long recognized as such. Fleming v. United States, 344 F.2d 912, 915 (10th Cir. 1965); Clark v. United States, 236 F.2d 13, 23 (9th Cir. 1956).

Section 456(j) sets forth the grounds, terms and procedures upon which per-

sons, called under the U.M.S. & T. Act but who by reason of religious training and belief are conscientiously opposed to participation in war, may be exempted from military service.

■ The provisions of that Act, however, are not applicable to persons who have already voluntarily enlisted, or who have already been legally inducted into the Armed Forces (Brown v. Mc-Namara, supra, 263 F.Supp. at 690) — except to the extent that such persons are classified as deferred from induction for the obvious reason that they are already in the armed forces. Thus, as already stated, petitioner in this case was granted a 1–D deferment from induction when it appeared that he was enlisted with the Army Reserve.

The power to discharge enlisted members of the Army before their term of service expires is expressly granted to the Secretary of the Army by 10 U.S.C. § 3811(b). Section 1162(a) of Title 10 U.S.C. provides that the Secretary of the Army will prescribe regulations for discharge of enlisted reserves of the Army.

The Secretary of Defense pursuant to his general power to control the Department of Defense (10 U.S.C. § 133), has issued Defense Directive (D.D.) No. 1300.6 to establish uniform procedures for the utilization of conscientious objectors in the Armed Forces.

Part III of D.D. 1300.6 entitled POLICY, provides in pertinent part as follows:

"A. No vested right exists for any individual to be discharged from military service at his own request before the expiration of his term of service. * * * Administrative discharge prior to the completion of his term of service is discretionary with the service concerned, based on judgment of the facts and circumstances in the case.

"B. * * * Consistent with this national policy, bona fide conscientious objection by persons who are members of the armed forces will be recognized to the extent practicable and equitable." (Emphasis added.)

Following the issuance of D.D. 1300.6, Army Regulation 135–25, specifically applicable to "Reserve Components—Disposition of Conscientious Objectors", was promulgated by order of the Secretary of the Army pursuant to his authority under 10 U.S.C. § 1162(a). This regulation implements the provisions of D.D. 1300.6.

Part IV of the regulation, entitled "POLICY", provides:

"a. No vested right exists for any individual to be discharged at his own request by reason of conscientious objection prior to the expiration of his contractual or statutory obligation.

"b. All requests for discharge based upon conscientious objections will be handled on an individual basis with final determination made at Headquarters, Department of the Army, in accordance with the criteria and procedures outlines in this regulation. * * * *"

This Regulation A.R. 135–25 further provides that the individual requesting discharge on such grounds will receive an interview by a chaplain and a psychiatrist. The chaplain is to report on the sincerity of the individual's belief and whether it is religious, and the psychiatrist is to report on whether there is anything to indicate mental disorder. These reports are then forwarded through military channels to the Commanding Officer, U. S. Army Reserve Components, Personnel Center, together with certain comments thereon by the unit commander—including his recommendation and reasons therefor.

Before making a final determination concerning discharge for conscientious objection, the military department concerned is required to forward each case to the Director, Selective Service System, for an "advisory opinion". (D.D. 1300.6.)

■ Thus, the determination whether it is "practicable and equitable" under the "facts and circumstances of the

case" to discharge a conscientious objector, once enlisted or legally inducted into the armed forces, is ultimately vested by statute, directive and regulation within the discretion of the military itself.

In Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953) the Supreme Court recognized that "the rights of men in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty, and the civil courts are not the agencies which must determine the precise balance to be struck in this adjustment".

Accordingly, the Courts have held that one who has voluntarily enlisted in, or has been legally inducted into the military and who thereafter claims conscientious objector status, is not entitled to a judicial determination of his claim and that any judicial inquiry by the Court is limited to determining whether petitioner has been afforded a reasonable opportunity to present and pursue his claim, under the applicable regulations, for ultimate determination by the military. See Brown v. McNamara, 263 F.Supp. 686 (D.C.N.J.1967), in which case petitioner had enlisted in the Army; Chevez v. Ferguson, 266 F.Supp. 879 (N.D.Cal. 1967), in which petitioner was enlisted in the Army Reserve and was on active duty training; In re Kanewske, 260 F. Supp. 521 (N.D.Cal.1966), petitioner was enlisted into the Navy.

*Procedural Due Process*

This brings us to the question of whether petitioner has been afforded a reasonable opportunity to present and pursue his claim under the applicable directives and regulations.

██ The only procedural requirements prescribed by the military regulations are those already hereinabove set forth. They do not include provision for any formal or adversary type hearing. Nor in our opinion was it necessary to provide therefor. See Brown v. McNamara, supra, 263 F.Supp. p. 691.

Petitioner contends, however, that the Army Reserve failed to conform to its own prescribed procedural requirements because there was a delay of six months between the time that petitioner filed his application for discharge and the time he received notice that the application had been denied. Petitioner contends that this delay was unreasonable, citing United States v. Gearey, 368 F.2d 144 (2 Cir. 1966).

██ That case does not seem to have any relevancy to the precise point made by petitioner. In any event, it is obvious that the procedure upon petitioner's application would involve some delay. It was necessary for the Army Reserve authorities to conduct the prescribed interviews, forward the reports through military channels, obtain the prescribed "advisory opinion" from Selective Service and then to make the final military determination. Six months cannot be said to be an unreasonable delay. Further, in view of the fact that petitioner's application was denied, the delay did not deprive petitioner of any freedom from enlistment which he might have otherwise sooner enjoyed. The same may be said concerning petitioner's contention at the argument that his requested interview with his commanding officer was not granted until after two months had passed.

The Court concludes that petitioner was not deprived of any procedural steps to which he was entitled by statute or regulation or by procedural due process under the Constitution.

For the foregoing reasons, the Court concludes that petitioner's application for writ of habeas corpus should be denied and, further, that the prayer of petitioner's First Amended Complaint for mandamus, declaratory and injunctive relief is without merit and should be denied.

The First Amended Complaint is, therefore, dismissed and the Order to Show Cause previously issued herein discharged.

This Memorandum shall serve as the findings and conclusions of the Court as required by Rule 52(a) Fed.R.Civ.Procedure.