**Paul Leroy OLSEN, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 22271.**

United States Court of Appeals,
Ninth Circuit.

March 26, 1970.

LeRue Grim, San Francisco, Cal., for appellant.

Paul Sloan, Asst. U. S. Atty., James L. Browning, U. S. Atty., San Francisco, Cal., for appellee.

Before HAMLIN and ELY, Circuit Judges, and TAYLOR, District Judge*

ELY, Circuit Judge:

Olsen appeals his conviction for having refused to submit to induction under the Univeral Military Training and Service Act, 50 U.S.C.App. § 462.

After serving in the Marine Corps Reserve for almost two years, appellant advised his commanding officer that his views and feelings on war and killing had undergone substantial change and that he wished to apply for a discharge as a conscientious objector. The commanding officer informed appellant that the requisite forms would be made available and instructed him to continue to attend monthly reserve meetings. Although appellant offered to attend these meetings in civilian dress, he was told by the officer that he would be marked absent unless he attended in uniform. Appellant then stopped attending monthly reserve meetings. Since the forms eventually provided by his commanding officer were incorrect, appellant obtained the proper forms from another source, completed the forms, and submitted them for consideration. His request for a discharge as a conscientious objector, however, was neither approved nor rejected. Instead, on December 7, 1965, he was certified by his reserve unit to his draft board for priority induction because of his failure to attend monthly reserve meetings. On January 28, 1966, the appellant's local board received a letter from appellant requesting the special form for conscientious objectors, SSS Form No. 150. Three days later the board mailed appellant an order to report for induction, and then, after another day, sent appellant the requested form 150. Although appellant promptly

---

* Honorable Fred M. Taylor, United States District Judge, District of Idaho, sitting by designation.

completed and mailed the form, requesting reclassification, the board did not reopen the case. Appellant subsequently reported to the induction center but refused to submit to induction or to submit to any of the pre-induction examinations. His indictment and conviction followed.

Appellant first argues that he was deprived of due process of law by his draft board's refusal to consider his request to be reclassified as a conscientious objector. The Government answers that appellant may not rely on this argument because his refusal to submit to pre-induction examinations constituted failure on his part to exhaust available administrative remedies. In support of its position, the Government cites Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305 (1943).[1] Our court has interpreted *Falbo* to mean that there can be no judicial review of a registrant's classification or the procedures followed in assigning his classification unless he has availed himself of the opportunity to fail a physical examination which could have changed his classification. Briggs v. United States, 397 F.2d 370 (9th Cir. 1968); Moore v. United States, 302 F.2d 929 (9th Cir. 1962); Mason v. United States, 218 F.2d 375 (9th Cir. 1955); Kalpakoff v. United States, 217 F.2d 748 (9th Cir. 1954), cert. denied, 348 U.S. 982, 75 S.Ct. 573, 99 L.Ed. 764 (1955); Francy v. United States, 217 F.2d 750, 751 (9th Cir. 1954); Williams v. United States, 203 F.2d 85 (9th Cir.), cert. denied, 345 U.S. 1003, 73 S.Ct. 1149, 97 L.Ed. 1408 (1953). Although the history of a more recent case, Soranno v. United States, 401 F.2d 534 (9th Cir. 1968), vacated, 395 U.S. 461, 89 S.Ct. 2013, 23 L.Ed.2d 444 (1969), suggests that this line of cases may have been disapproved insofar as they require the registrant to report for induction and take the examinations there given as a prerequisite to his later challenging either his classification or the procedures followed by his draft board,[2] it is unnecessary for us

---

1. *Falbo* involved an appeal from a conviction for failure to report for assignment to civilian work of national importance under the Selective Training and Service Act of 1940. The Court there held that there could be no judicial review of the propriety of a board's classification in a criminal prosecution for the willful violation of an order to report for the last step of the selective process. The Court reasoned that the registrant should be required to complete the last step of the selective process by taking the mental and physical tests administered at the induction center since a criminal prosecution would not lie if he failed these tests and was rejected.

2. In *Soranno* we affirmed the conviction of one Daniel Soranno for failing to report for induction. We held that he could not raise the question of whether he should have been classified as a conscientious objector, stating "He failed to go to the brink of induction—or even so far as to report for a physical examination; or to report on a second request after a first refusal to report. The propriety of the classification is thus not open to appellant's attack." 401 F.2d at 535. The Supreme Court vacated our court's judgment and remanded the cause

to the District Court for "further consideration in light of *McKart* * * *." 395 U.S. at 461, 89 S.Ct. at 2013.

In McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) the local board revoked petitioner's sole surviving son exemption after learning that the last living member of his family had died. The petitioner failed to appeal his reclassification and did not respond to his draft board's order to report for a pre-induction physical examination. He was declared delinquent, ordered to report for induction, and, after he failed to do so, convicted of failing to report. On appeal, the Government argued that the petitioner was precluded from challenging his reclassification since he had failed to report for and pass his pre-induction physical examination. The Supreme Court held that the petitioner's failure to report for this examination did not bar him from challenging the validity of his classification as a defense to the criminal prosecution. The Court first noted that "*Falbo* was limited by Estep v. United States, [327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567] * * * which held that a registrant could secure limited judicial review of his classification * * * if he had pursued his administrative remedies to an end." *Id.* at 202, 89 S.Ct. at

here to reach that question. None of our prior cases involved a registrant who was currently a member of a reserve unit of the armed forces of the United States. Appellant here, as a member of the Ready Reserve, met "Marine Corps standards of mental, moral, professional and physical fitness." 32 C.F.R. § 713.651. Furthermore, since both the military and, as we later hold herein, the Selective Service authorities acted with inexcusable disregard of Olsen's rights, we decline, in the circumstances of this case, to apply the exhaustion of remedies rule so as to prevent the appellant from challenging the validity of his conviction.

█ We thus reach the ultimate issue whether the local board should have considered the claim of conscientious objection before issuing the order to report for induction. In Quaid v. United States, 386 F.2d 25 (10th Cir. 1967), on almost identical facts, the court resolved this question in the affirmative, holding that the language of 50 U.S.C.App. § 456(j)[3] required the local board to consider and dispose of Quaid's claim before sending him an induction notice. This provision reads, in part, "Nothing contained in this title [sections 451, 453, 454, 455, 456, and 458–471 of this Appendix] shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who by reason of religious training and belief, is conscientiously opposed to participation in war in any form." The Government argued in Quaid, as it does here, that this provision was not controlling since another provision of the same statute, 50 U.S.C. App. § 456(c) (2) (D),[4] and its imple-

---

1667. It then distinguished *Falbo* from *McKart*, finding that one of the factors which influenced the *Falbo* Court—"a fear of litigious interruption of the Selective Service System"—was not present in *McKart* since "the administrative process in [*McKart* was] at an end." *Id.* The Court held, in effect, that the administrative process was at an end in *McKart* even though the petitioner had failed to report to the induction center and take the required tests. Compare Lockhart v. United States, 420 F.2d 1143 (9th Cir.) (en banc).

3. The language of 50 U.S.C. App. § 456(j), applicable both at the time *Quaid* was decided and at the time this action was commenced provided, in relevant part, as follows:

"Nothing contained in this title [sections 451, 453, 454, 455, 456, and 458–471 of this Appendix] shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. Religious training and belief in this connection means an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code. * * * Any person claiming exemption from combatant training and service because of such conscientious objections shall, if such claim is not sustained by the local board, be entitled to an appeal to the appropriate appeal board. Upon the filing of such appeal, the appeal board shall refer any such claim to the Department of Justice for inquiry and hearing. * * * *" For the purposes of this decision, both the above quoted language from subsection (j) and the present version of subsection (j), as amended in 1967 by Pub.L. 90–40, § 1(7), 81 Stat. 100, are identical.

4. 50 U.S.C. App. § 456(c) (2) (D) provides, in relevant part:

"Notwithstanding any other provision of this Act [sections 451, 453, 454, 455, 456, and 458–471 of this Appendix], the President, under such rules and regulations as he may prescribe, may provide that any person enlisted or appointed after October 4, 1961, in the Ready Reserve of any reserve component of the Armed Forces * * * who fails to serve satisfactorily during his obligated period of service as a member of such Ready Reserve * * * *may be selected for training and service and inducted into the armed force of which such reserve component is a part, prior to the selection and induction of other persons liable therefor.*" (Emphasis added.)

menting regulation, 32 C.F.R. § 1631.8,[5] require that local boards induct delinquent members of the Ready Reserve without changing their classifications. The court responded to this argument by holding the implementing regulation invalid insofar as it would require the local board to order the priority induction of a delinquent reservist without considering his conscientious objector claim. We adopt the well-reasoned opinion of the Tenth Circuit on this point and, rather than undertaking to restate the *Quaid* court's analysis, we quote from the opinion:

"We note that the regulation goes beyond the statute by changing the permissive word 'may' to the imperative word 'shall.' That is to say, although § 456(c) (2) (D) provides that, 'Nothwithstanding any other provision of this Act,' the President may provide by regulation that a delinquent reservist 'may be selected' for priority induction. But the implementing regulation goes beyond that, and provides that a delinquent reservist 'shall be ordered to report for induction * * *.'

"The regulation's substitution of the word 'shall' for the statutory word 'may' would, if valid, cause an incongruity: it would result in two diametrically opposite provisions. On the one hand, § 456(j) provides that
'Nothing contained in this title [sections 451, 453, 454, 455, 456, and 458–471 of this Appendix] shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. * * *'

And, on the other hand, § 456(c) (2) (D) and the implementing regulation, read together, provide that 'Notwithstanding any other provision of this Act,' a delinquent reservist 'shall be ordered to report for induction' regardless of and 'without changing his classification.'

"In our view, Congress knowingly and advisedly used the word 'may' in providing that a delinquent reservist 'may be selected' for priority induction; it knew there might be cases in which priority induction would be inappropriate because it would violate the emphatic, imperative provision of § 456(j) that a conscientious objector shall not be required to serve in the armed forces.

"We hold the regulation invalid insofar as it changes the statutory word 'may' to the imperative 'shall' and thus requires the priority induction of a delinquent reservist, regardless of another provision of the statute which directs the local board to investigate a conscientious objector claim before ordering induction. With the invalid regulation eliminated, it is seen that there is no conflict between § 456(j) and § 456(c) (2) (D). The use of the permissive 'may' in the latter section allows full effect to be given to the requirement of the former section that a true conscientious objector shall be exempt from combatant service."

386 F.2d at 28–29. In Lurie v. United States, 402 F.2d 297 (5th Cir. 1968), on almost identical facts, the Fifth Circuit adopted the same rationale.

The Government contends that *Quaid* was incorrectly decided, arguing that the board properly avoided consideration of Olsen's request since it was limited to

---

5. 32 C.F.R. § 1631.8 provides, in relevant part:
"(a) Notwithstanding any other provision of the regulations in this chapter, any registrant enlisted or appointed after October 4, 1961, in the Ready Reserve of any reserve component of the Armed Forces * * * who fails to serve satisfactorily during his obligated period of service as a member of such Ready Reserve * * * of which he becomes a member as certified by the respective armed force, *shall be ordered to report for induction by the local board regardless of the class in which he is classified and without changing his classification. * * *"* (Emphasis added.)

the purely ministerial function of ordering him into active duty. To support this contention, the Government cites Brown v. McNamara, D.C., 263 F.Supp. 686 (D.N.J.), aff'd, 387 F.2d 150 (3d Cir. 1967), cert. denied sub nom., Brown v. Clifford, 390 U.S. 1005, 88 S.Ct. 1244, 20 L.Ed.2d 105 (1968) and United States ex rel. O'Hare v. Eichstaedt, 285 F.Supp. 476 (N.D.Cal.1967). *Brown*, however, was a proceeding on a petition for writ of habeas corpus by a recruit in the regular army. The court never considered the question of whether a delinquent member of the Reserves was foreclosed from having his claim to reclassification considered by his board at the time it was processing him for priority induction. In *O'Hare*, on the other hand, the petition for a writ of habeas corpus was sought by a private in the United States Army Reserve, and the court did reach the question. The resolution of the issue, however, was not as the Government suggests. The court there stated: "So far as the Court can determine, there is no reason why petitioner cannot, prior to any such Selective Service induction, assert his claim of conscientious objection upon the grounds, terms and procedures provided by 50 App. U.S.C. § 456(j)." *Id.* at 480.

The Government also relies on United States v. Lonstein, 370 F.2d 318 (2d Cir. 1966), an opinion in which it is stated that the local board's responsibility in a case involving a delinquent reservist is "solely ministerial." *Id.* at 320. Although the *Lonstein* court did state that the regulations providing a right to a hearing with respect to a classification or refusal to reopen a classification were inapplicable, the statement was dictum. Lonstein's claim that he was improperly classified without a hearing was based on his erroneous belief that the Army Reserve unit's decision to certify him to his draft board as delinquent was a "change of classification." The court stated that "[h]is remedy was to seek to have the Army's certification withdrawn." *Id.* It was not faced with the claim that Lonstein was entitled to a classification that would have prevented his induction.

We also reject the Government's argument that the local board was foreclosed from considering Olsen's claim by 32 C.F.R. § 1625.2, which prohibits the reopening of a registrant's classification after an induction order has been issued unless the board first makes a finding that the registrant has undergone a change in status resulting from circumstances beyond his control. The board was on notice of Olsen's claim before it issued the induction order. Rather than promptly responding to his request for the form 150, it waited three days, issued the order to report for induction, and then, finally, mailed the requested form. Thus, by its action, the board made the decision not to reopen at a time before the induction order was issued, a time when it could have reopened without making the finding required by 32 C.F.R. § 1625.2. To permit the Government to rely on 32 C.F.R. § 1625.2 when the board's own neglect was responsible for the notice to report for induction having issued before the completed conscientious objector form was received would indeed constitute an impermissible deprivation of Olsen's due process rights.

Reversed.