Private Peter F. **HICKEY**, United States Army Reserve,

v.

**SECRETARY OF** the **ARMY** et al.

Misc. Civ. No. 70–125–C.

United States District Court, D. Massachusetts.

Jan. 13, 1971.

Michael S. Field, Field & Rudnitsky, Boston, Mass., for plaintiff.

Herbert F. Travers, Jr., U. S. Atty., Paul F. Ware, Asst. U. S. Atty., for defendants.

## OPINION

CAFFREY, District Judge.

This is a civil action in which plaintiff, a Private in the United States Army Reserve, seeks declaratory and injunctive relief against respondents, the Secretary of the Army, the Commanding Officer of the 399th Evacuation Hospital Unit, and the Commanding General, First Army. Jurisdiction of this court is invoked under 28 U.S.C.A. § 1331.

The complaint recites that plaintiff has received an order to report for active duty in the Army at Fort Dix, New Jersey, pursuant to the provisions of AR 135–91, on the grounds that, while a member of a reserve component, he was absent from prescribed drills on five occasions. Plaintiff challenges the validity of the order to active duty on the grounds that AR 135–91, on which that order is based, is unconstitutional on its face, as it does not provide for a hearing as a part of its appeal process. The complaint alleges that plaintiff was marked absent at several drills at which he was actually present, but that, in fact, he was given an absent mark by a military superior on the grounds that his appearance, consisting of extra-long growth of hair and sideburns, was unsatisfactory to his military superiors.

The matter came before the court for hearing on plaintiff's motion for preliminary injunction. At the hearing, documentation from plaintiff's "201 File" was produced by Capt. Lea B. Pendleton, of the Army Judge Advocate General's section. This indicated that according to the records of plaintiff's reserve unit, he was absent from four of the five drills in question, and that he was marked absent pursuant to the provisions of AR 135–91 because of the appearance he presented during a formal unit-inspection at the fifth drill, held on 18 May 1970.

It should be noted initially that on the occasion of each unauthorized absence by plaintiff from a scheduled drill, he was sent, by certified mail–return receipt requested, a Form 840, "Letter of Instruction–Obligation to Participate Satisfactorily," advising him that he had been credited with an unexcused absence on the particular date of that absence, and of the type of drill which he had missed. He was reminded, in paragraph 2 of the form, that,

"A member who accrues in any one year period a total of five or more unexcused absences from scheduled training assemblies is subject to being reduced to grade E-2 and being or-

dered to active duty for a period which when added to prior service on active duty, active duty for training, annual field training or full time training duty, will total 24 months."

Paragraph 3 of Form 840 explains to the reservist how he may convert his absence from unexcused to excused within fourteen days of the absence if certain conditions existed to justify his absence, such as sickness, injury, emergency or other circumstances beyond his control.

Paragraph 4 of Form 840 advises the reservist of the total number of unexcused absences he has accrued within a year, and the concluding paragraph, paragraph 5, sets out the hour and date of the next scheduled training assembly which he is obliged to attend.

With reference to all five absences on the part of petitioner, the Forms 840 indicate that information with regard to each absence, similar to that described above, was given and, in each case, what appears to be petitioner's signature upon a return receipt is affixed to the bottom of the Forms 840 offered at the hearing. I am satisfied, on the basis of comparing petitioner's signature on the verified complaint with the signatures on the return receipt cards, that petitioner did in fact get actual notice and did sign for receipt of the Form 840 on all five occasions.

AR 135–91 defines satisfactory participation at a drill as follows, in paragraph 5d(2):

"Attendance at all scheduled unit training assemblies as a member of a paid drill unit of the Army National Guard or Army Reserve, unless excused by proper authority as provided herein. A member present at a scheduled unit training assembly will not receive credit for attendance thereat unless he is in the prescribed uniform, presents a neat and soldierly appearance, and performs his assigned duties in a satisfactory manner as determined by the unit commander."

Basic to all contentions on the part of the plaintiff herein is the allegation that a denial of procedural due process underlies the procedures followed by the military authorities with reference to plaintiff. It is well to recall the admonition of Chief Justice Warren in Hannah v. Larche, 363 U.S. 420, at p. 442, 80 S.Ct. 1502, at p. 1514, 4 L.Ed.2d 1307 (1960):

"'Due process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts. * * * Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors."

■■ That persons who have voluntarily enlisted in a branch of the military service of the United States are governed by different laws, procedures and considerations than those which govern civilians, has been clearly established by the Supreme Court in its opinion in Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953). There, the Court pointed out, at p. 140, 73 S.Ct. at p. 1047–1048:

"Military law, like state law, is a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment. This Court has played no role in its development; we have exerted no supervisory power over the courts which enforce it; the rights of men in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty, and the civil courts are not the agencies which must determine the precise balance to be struck in this adjustment. The Framers expressly entrusted that task to Congress.

"Indeed, Congress has taken great care both to define the rights of those subject to military law, and provide a complete system of review within the military system to secure those rights."

A similar thought was expressed by the Supreme Court the same year in Orloff v. Willoughby, 345 U.S. 83, at p. 93,

73 S.Ct. 534, at p. 540, 97 L.Ed. 842 (1953), where Mr. Justice Jackson observed:

"However, we are convinced that it is not within the power of this Court by habeas corpus to determine whether specific assignments to duty fall within the basic classification of petitioner. * * *

"We know that from top to bottom of the Army the complaint is often made, and sometimes with justification, that there is discrimination, favoritism or other objectionable handling of men. But judges are not given the task of running the Army."

and at p. 94, 73 S.Ct. at p. 540:

"The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters. * * * we have found no case where this Court has assumed to revise duty orders as to one lawfully in the service.

"* * * Discrimination is unavoidable in the Army. Some must be assigned to dangerous missions; others find soft spots. Courts are presumably under as great a duty to entertain the complaints of any of the thousands of soldiers as we are to entertain those of Orloff. * * * It is not difficult to see that the exercise of such jurisdiction as is here urged would be a disruptive force as to affairs peculiarly within the jurisdiction of the military authorities."

The precise denial of due process argument that is being urged herein was made by the plaintiff in Brown v. McNamara, 263 F.Supp. 686 (D. N.J., 1967), aff'd. on Judge Lane's opinion as to the procedural due process point, 387 F.2d 150, at 152 (3 Cir. 1967). In the *Brown* case, which came before the district court for the District of New Jersey as a petition for writ of habeas corpus, the opinion of the district court indicates as follows:

"It is petitioner's contention that he is being held in violation of his rights in that * * * (c) denial of his application for discharge was in violation of the due process clause of the fifth amendment because no hearing was held and no reason for the denial of discharge was given; (d) denial of his application for discharge was a violation of equal protection of laws because he was not given the hearing rights accorded those seeking conscientious objector status prior to entering the armed forces and this differential treatment is without rational basis." (p. 690)

"With this as a background, we will deal with the contention that the lack of a hearing in the post-induction procedure denied petitioner equal protection because pre-induction applicants are given this right. Our answer to this is that the necessity of the armed services to order and control those already within its operation is a sufficiently rational basis for such a distinction. As the Court recognized in Burns v. Wilson, 346 U.S. 137, 139–140, 73 S.Ct. 1045, 1048, 97 L.Ed. 1508, the rights of members of the armed forces are not always as great as those of civilians because 'the rights of men in the armed forces must perforce be conditioned to meet certain overriding demands of discipline and duty * * *.' * * * Thus, we are unable to conclude that there has been a violation here merely because no hearing is required." (p. 691)

In affirming the district court, Judge Van Dusen pointed out, 387 F.2d 150, 152:

"Regardless of the constitutional underpinnings of the right to classification as a conscientious objector, it is perfectly rational and consonant with constitutional concerns, including the separation of powers, to regard voluntarily enlisted servicemen as a distinct

class from inducted civilians or servicemen in general discharged to civilian life."

In Winters v. United States, 281 F. Supp. 289, 299 (E.D. N.Y. 1968), Judge Dooling likewise ruled that exercise of discretion by the military authorities in making an involuntary assignment of a ready reservist to active duty, because of his failure to maintain satisfactory performance in the reserve, is not subject to judicial review:

"The exercises of discretion involved are irreviewable. At the troublesome interface between the civil order and the sealed-off military sub-order with its own code of laws, system of justice and hierarchy of tribunals the task of the civil court is limited to determining whether or not the military has acted within the jurisdiction conferred on it by valid law; that includes the duty to determine, where an act of discretion is the bridge over which must lead the path of determining whether or not a quasi-civilian will be transferred from civilian to full military status, that the discretion has been exercised; the civil court would exceed its duty if it reviewed the exercise of discretion to see whether it was well or ill-founded by any substantial evidence rule."

This ruling was affirmed by the Court of Appeals for the Second Circuit, 390 F.2d 879 (1968).

The *Winters* case was cited with approval in an opinion written for a three-judge court in this district by Chief Judge Aldrich, in Sullivan v. Cushman, 290 F. Supp. 659 (D. Mass. 1968).

Still another application of the same ruling appears in Fox v. Brown, 402 F. 2d 837, 840 (2 Cir. 1968), where the court held:

"The courts will not ordinarily assume to revise the orders of those lawfully in the service; * * *. _ This court has specifically ruled that an activation order under 10 U.S.C. § 673a for unsatisfactory performance in the reserves may only be reviewed to the extent of determining whether the military had acted within its jurisdiction under valid law; Winters v. United States, [supra]."

Petitioner's reliance on Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L. Ed.2d 287 (1969), a case involving the rights of welfare recipients, is totally inapposite. In fact, in *Goldberg* the Court made the observation, at p. 263, 90 S.Ct. at p. 1018:

"Accordingly, as we said in Cafeteria & Restaurant Workers Union, etc. v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748–1749, 6 L.Ed.2d 1230, (1961), 'consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.' See also Hannah v. Larche, 363 U.S. 420, 440, 442, 80 S.Ct. 1502, 1513, 4 L.Ed.2d 1307 (1960)."

The line of cases cited above, particularly Brown v. McNamara, *supra,* and Winters v. United States, *supra,* has established that consistently with the due process clause, a "determination of the precise nature of the government function involved" in calling up members of a reserve unit to active duty outweighs "the private interest" of the individual reservist "affected by that governmental action."

Having in mind that petitioner, like any other member of a reserve component of the military forces of this nation, enters upon his service as a member of a reserve component on the basis of a contract of enlistment, and that by serving properly and in full compliance with the terms of his reserve contract he avoids the necessity of serving on active duty in the armed services under the provisions of the Selective Service law, I am not aware of any legal basis for a claim that an evidentiary hearing for a person so situated is mandated by the Constitution of the United States prior to his being ordered to active duty

for non-compliance with the terms of his contract, in light of the above-noted case law.

In terms of fairness and procedural due process, the papers on file herein indicate that petitioner was notified of his unauthorized absence and warned of the possible consequences thereof, on September 21, 1969, April 30, 1970, May 4, 1970, May 11, 1970 and May 18, 1970. On each of these occasions he was given written notice, by certified mail, of the time and place of the alleged unauthorized absence, and of the fact that he had fourteen days in which to challenge the accuracy of the records of his unit indicating that he had been guilty of an unauthorized absence. On none of the five occasions did petitioner make any attempt to challenge the accuracy of the military entries, even though he was also reminded that a call-up to active duty loomed if he missed five drills.

It should be remembered that the Court of Appeals for the Second Circuit has also held, in Smith v. Resor, 406 F. 2d 141, 145 (1969):

"The decision as to what constitutes the correct appearance of reservists is, absent extraordinary circumstances not present here, within the jurisdiction of the Army."

This same ruling was again endorsed by the Court of Appeals for the Second Circuit in Raderman v. Kaine, 411 F.2d 1102 (1969).

Counsel for plaintiff has urged that the Single-Justice opinion of Mr. Justice Douglas, sitting as Circuit Justice for the Ninth Circuit in Scaggs v. Larsen, 396 U.S. 1206, 90 S.Ct. 5, 24 L.Ed.2d 28 (1969), is supportive of his position. However, counsel has failed to advise the court that subsequently, on April 7, 1970, the Court of Appeals for the Ninth Circuit, *per curiam*, upheld the district court's dismissal of Scaggs v. Larsen, 423 F.2d 1224 (1970), see also, 396 U.S. 1206, 90 S.Ct. 5, 24 L.Ed.2d 28; and that the Supreme Court denied certiorari in the case on November 23,

1970, 400 U.S. 930, 91 S.Ct. 186, 27 L.Ed.2d 190.

Accordingly, the temporary restraining order which was issued herein on Friday, January 8, 1971, in order to afford the court time to examine the papers on file and the applicable law, is hereby dissolved; the motion for preliminary injunction is denied; and the defendants' motion to dismiss is allowed.